The question presented is, whether the plaintiffs or defendants are entitled to discharge the duties of commissioners of excise for the city of Schenectady; and this depends upon the construction of section 2, chapter 175 of the Laws of 1870, entitled "An act regulating the sale of intoxicating liquors." On the part of the plaintiffs it is claimed that the mayor, in the first instance, and at the end of every third year thereafter, has the power to appoint excise commissioners for said city, without the co-operation or joint action of the aldermen as a board, or any other board or officer; and that, having received such appointment from the mayor on the first Monday of April, 1873, they are entitled to enter upon the duties of the office.
The defendants were appointed commissioners of excise for said city, by the mayor, within ten days after the passage of the act of 1870, as therein provided; and, while conceding that the mayor alone had full authority to make the first appointment of commissioners, they claim that subsequent appointments can only be made by the mayor and board of aldermen, as provided in the act for the cities of New York and Brooklyn; and that, until a new appointment is made in that manner, they are entitled, under the provisions of the act to hold the office.
It must be confessed that the statute is not as explicit upon the point in question as it should be, and there are plausible reasons for an honest difference of opinion as to its true construction. It is the duty of courts, by the application of established canons, to give the statute a reasonable construction, and one which will if practicable, carry out the real *Page 390 
intent and purpose of the legislature. The primary source of light is the language employed; and the solution of the question will be facilitated by eliminating from the statute everything not relating to the subject of the appointment of these officers and collating its provisions relating thereto; it will then read as follows: "The mayor of each of the cities, except in the cities of New York and Brooklyn, shall appoint the commissioners of excise in their respective cities, within ten days after the passage of this act, but in the cities of New York and Brooklyn the mayor shall nominate three good and responsible citizens to the board of aldermen of such cities, respectively, who shall confirm or reject such confirmation. * * * On the first Monday in April, in every third year hereafter, the mayor and board of aldermen shall proceed to appoint, in the manner above described, persons qualified as aforesaid to be such commissioners of excise, in their respective cities for the next three years," etc.
The statute declares that appointments, after the first are to be made by the mayor and board of aldermen "in the manner abovedescribed." The only mode before described for the appointment by the mayor and board of aldermen was expressly confined to the cities of New York and Brooklyn; and if the word, "manner," refers to that alone, as claimed by the counsel for the defendants, it might be inferred that the limitation would also restrict such appointments to those two cities; and if so there would be no express power to make appointments, after the first, in any of the cities of the State except in New York and Brooklyn. There are no words expressly extending the provision for subsequent appointments to all the cities of the State, and construing the words "mayor and aldermen" to signify the same as when first used, and the word "manner" to the mode of appointment in New York and Brooklyn alone, the implication is not destitute of force that no other subsequent appointments were provided for. This would be carrying the defendants' construction of the act to a point which would defeat it; because it is manifest from various provisions *Page 391 
of the act, that the legislature intended to provide for all the cities of the State. Aside from this I am unable to concur with the counsel for the defendants in his construction of the language of the act. The first appointment is to be made by the mayor in all the cities of the State except New York and Brooklyn; and in those by the mayor and board of aldermen. The provision for the subsequent appointments, it is evident, was intended to confer the power upon the same officers, and the language should be construed as though it had read, the same officers shall appoint in the manner above described. This last clause is to be applied distributively to each mode, and not restricted to one; and especially should it not be applied to the exceptional portion of the manner prescribed. The rule of the statute is for the mayor to appoint in all the cities, and the exception applies only to New York and Brooklyn; and we cannot suppose, in referring to it generally, that the intent was to confine it to the exception.
Stress was laid upon the singular number being used, as evidence of an intention to confine the subsequent appointments to one only of the modes before described. So the words "the mayor and aldermen," "shall appoint," etc. Strict grammatical rules should not prevail over the manifest sense of the language. In this statute the words "mayor and aldermen" are expressly applied to more than one city; and it is evident that strictness was not observed in this respect. But the word "manner" has a larger signification. The statute provides the manner of appointing excise commissioners in all the cities of the State; and although different modes of appointment are prescribed for different cities, yet the word "manner," when used to denote the scheme of the statute, should be regarded as including all the regulations on the subject for all the cities. The subsequent words "in their respective cities," are significant of the intent here indicated. It is admissible to read these words in connection with the words "in the manner above described," and regard the intervening words parenthetically. A slight change of *Page 392 
punctuation would require such a reading, and the connection is more consonant with accurate expression than a connection with the words immediately preceding. The statute would then read: "The mayor and board of aldermen * * * shall appoint in the manner above described in their respective cities," etc. This would clearly refer to the two modes of appointment before described by the different officers specified. There are other considerations having a legitimate bearing confirmatory of this construction. No reason is perceived for a change in the first and subsequent mode of appointment. The counsel for the defendants suggested that the power was vested in the mayors alone at first, so as to insure an early appointment, but the act provides for the continuance of the old officers until an appointment is made according to the statute; and if a difference was intended in respect to all the other cities of the State, there is no reason why the same difference should not have been extended to New York and Brooklyn.
Another controlling consideration is, that there is no "board of aldermen" in any city of the State except in New York and Brooklyn. There are officers of other cities called aldermen, but they never sit as a "board of aldermen." When acting as a board, whether in conjunction with other officers, as in some of the cities, or by themsleves, they are known and recognized as the common council, and in no case as a board of aldermen. It must be presumed that the legislature knew this; and it cannot be supposed that they would vest a power of so much importance upon a body which had, and could have no recognized legal existence. It was suggested in answer to this, that this language should be construed to apply to these officers when acting together, and that the word "board" was used in its common acceptation. In many of the cities of the State, the aldermen can exercise no powers as a body, under any name, but are authorized to act as a local governing power only when associated with other officers, as the mayor and recorder. It would require the plainest language to justify the inference that the legislature intended to confer this single *Page 393 
power upon the aldermen of a city, independent of the legal organizations with which they are connected. It is a general rule that when a word has been used in a certain sense in one part of a statute, it is to receive the same meaning when used in other parts, unless a different meaning is in some way indicated.
It is also argued that the legislature did not mean a legally recognized body by the term "board," because in the first section of the act, a "board of trustees" of an incorporated village is mentioned, while the statutes providing for incorporated villages do not use the word "board," but simply "the trustees." I have not examined the statutes, but if this is so, the material distinction exists, that trustees of villages, when acting together as such, are the local governing body, and are properly, when so acting, called a board, while aldermen in many of the cities have no power or authority to act as a body; and it is unreasonable to infer that the legislature intended to organize them into a board, or body, for the exercise of this single power.
We think there is no reasonable doubt of the intent of the legislature; and while the language is not fortunate, no rule of law is violated in construing the statute according to that intent. "It is not the words of the law, but the internal sense of it, that makes the law; the letter of the law is the body, the sense and reason of the law is the soul."
The judgment must be affirmed, but by stipulation, without costs.
All concur.
Judgment affirmed. *Page 394