1877.]    People ex rel. Babcock et al. *v.* Murray et al.    521

Statement of case.

The People ex rel. Jeptha W. Babcock. et al., Respondents, *v.* John T. Murray et al., Appellants.

Under the provisions of the excise law of 1870 (§ 2, chapter 175, Laws of 1870), providing for the appointment of commissioners of excise in cities, such an appointment cannot be made verbally.

Commissioners of excise cannot by their act or assent transfer the office to others, or relieve themselves from the duties of the office, save in one of the ways designated by the statute (1 R. S., 122, section 34.)

*It seems*, that no appointment to any civil office can be made verbally, save where permitted by the terms of the statute conferring the appointing power; in the absence of such permission, there must be a commission—*i. e.* a formal writing signed by the official with whom the power of appointment rests, showing clearly his intention to appoint the person named, his belief that such writing is that required by the statute, and his intention to make it the final act on his part to perfect the appointment.

*People ex rel.* v. *Fitzsimmons* (68 N. Y., 514); *People ex rel.* v. *Van Slyck* (4 Cow., 297); *Saunders* v. *Owen* (2 Salk., 467) distinguished.

*People ex rel. Babcock* v. *Murray* (8 Hun, 579) reversed.

(Argued June 22, 1877 ; decided September 25, 1877.)

Appeal from judgment of the General Term of the Supreme Court in the fourth judicial department, affirming a judgment in favor of relators entered upon a decision of the court at Special Term. (Reported below, 8 Hun, 579.)

This action was in the nature of a *quo warranto* to try the title to the office of commissioners of excise of the city of Lockport.

It appeared by the evidence that defendants were duly appointed by the mayor commissioners of excise of said city in April, 1870. In April, 1873, the then mayor, at a meeting of the common council, stated that he proposed or nominated the relators as commissioners, and asked the common council to vote upon them or to confirm the nomination. The common council passed a resolution purporting to confirm the nomination, to take effect at the expiration of the term of the defendants. The relators took the oath of office and assumed to act as commissioners, defendants delivering

up to them the books and papers; and they did so act until June, 1874, when defendants resumed the office, and after that time acted, claiming to be such commissioners.

Further facts appear in the opinion.

*George C. Greene*, for the appellants. The relators were not legally appointed commissioners of excise. (*People ex rel. Dorn* v. *Gates*, 56 N. Y., 387.) The mayor could only appoint by writing or commission, and until such commission was signed by him there was no appointment. (*People ex rel.* v. *Fitzsimmons*, 68 N. Y.; *People* v. *Murray*, 5 Hun, 42; 1 R. S. [5th ed.], 410, § 23; *People* v. *Molyneaux*, 53 Barb., 9; *Marbury* v. *Madison*, 1 Cranch, 137, 157, 162; Lieut. Cox Cas., 4 Ops. U. S. Atty-Genl, 217, 219; *U. S.* v. *Le Baron*, 19 How. Pr., 178; *People* v. *Van-Slyke*, 4 Cow., 297.)

*Charles S. Fairchild*, Attorney-General, for the respondents. The relators were duly appointed. (Laws 1870, chap. 175, § 2; Dil. on Mun. Corp., §§ 58, 151.) No formalities were necessary in making the appointments. (*People* v. *Van Slyke*, 4 Cow., 297; *Achley's Case*, 4 Abb. Pr., 35.) The concurrence of the common council was not necessary. (*People* v. *Gates*, 56 N. Y., 387, 389, 393.) No commission or warrant was necessary. (*Marbury* v. *Madison*, 1 Cranch, 137; *Johnson* v. *Wilson*, 2 N. H., 202; *Billy* v. *State*, 2 N. & McC., 357; *Saunderson* v. *Owens*, 2 Salk., 467; *Hoke* v. *Field*, 19 Am. R., 58; *People* v. *Van Slyke*, 4 Cow., 323.)

Allen, J. At the time of the expiration of the term of office of the defendants in 1873, the power to appoint their successors was in the mayor of the city of Lockport, and the assent or approval of the common council was not required, and all acts of the common council in confirming any nomination to the office, or ratifying the action of the mayor in making an appointment, were nullities. (Laws of 1870, ch. 175, § 2; *People* v. *Gates*, 56 N. Y., 387; *Same* v. *Fitzsim-*

*mons*, 68 id., 514.)   The learned judge by whom the action
was tried has found as a fact "that in the month of April,
1873, the relators were duly appointed to the office of excise
commissioners of the city of Lockport in place of the defend-
ants," and to this finding there is an exception as not only
not warranted by, but as against evidence.   The evidence
discloses the fact, which is undisputed, that the only action
of the mayor was a verbal nomination of 'the relators to the
common council for appointment to the office.   The vote of
the common council and the record of their action upon the
nomination must be laid out of view as *ultra vires*, and with-
out efficiency.   They add nothing to the verbal declaration
and statement of the mayor, and the claim is that such nom-
ination was a verbal appointment of the persons named to
the office, the completed act of the mayor making the
appointment; that an appointment by parol without writing
is a valid exercise of the power to appoint, and this proposi-
tion must be sustained, or the respondents cannot hold their
judgment.   In the *People* v. *Fitzsimmons* we held, with con-
siderable hesitation and not without great doubts, that a
nomination of the mayor of Albany to the common council
of that city, and for their action, of individuals for office
under the same statute, in writing, signed by the mayor offi-
cially and filed with the clerk of the common council, in the
absence of any statute prescribing the form of the appoint-
ment or of the commission to be issued, followed by the
taking of the oath of office by the persons named before the
mayor, was a sufficient appointment by the mayor under the
statute.   No stress was laid upon the action of the common
council.   The paper writing signed by the mayor officially,
although addressed to the common council and in the form
of a nomination of the persons to that body, was an official
appointment to the office by the mayor, and a substantial
compliance with the statutes.   Judge EARL says: "No fur-
ther commission was necessary.   That document containing
or evidencing the appointment would answer the purpose of
a commission, if one was necessary."   He says also: "It

cannot be denied that much can be said in opposition to the conclusion we have thus reached." There is certainly great force in the dissent of Judge Rapallo. It is nowhere intimated in the opinion that anything less than a formal paper writing, signed by the official with whom the power of appointment rests, showing clearly his intent to appoint the persons named, and his belief that such writing is that required by the statute, and his intention to make that the final act on his part in perfecting the appointment, will constitute an appointment conferring the office upon the appointees, and such was the paper signed by the mayor in that case, as interpreted and construed by this court. There is no color in the opinion, or in any statute of this state, or any custom or usage of which we have knowledge, for claiming that an appointment to any civil office can be made verbally or without a proper writing evidencing the fact.

It would be unfortunate if the title to office of one upon whose official acts public interests and private rights hinged, did or could be made to depend upon the verbal declarations and statements of the person having the power to make the appointment, to be proved by parol and liable to be forgotten, misunderstood or misreported, subject to all the contingencies and infirmities which are incident to verbal evidence, or evidence by parol, so pregnant of mischief and misfortune as to have led to the enactment of the statute of frauds. It will not be presumed that the Legislature, while making void, contracts involving trifling pecuniary interests unless evidenced by some writing, intended that important civil offices should be conferred without a commission or any writing, but simply by a verbal statement of an individual in any form which by the bystanders should be understood as expressing a present intent to make the appointment; and a liberal interpretation will be given to the statutes bearing upon the subject if necessary to avoid any such conclusion.

Comparatively little aid can be derived from a study of the older English cases in determining the sufficiency of an appointment to office under our system of government. In

England, offices are regarded as a species of incorporeal heriditaments, and may be granted to a man in fee or for life as well as for years, and at will, and the creation of offices and the appointment to office is intimately connected with the prerogative of the Crown. (Com. Dig., Officer (*a*); 2 Bl. Com., 36.) In discussing the requisitions of an appointment to a particular office where there was neither statute nor usage to control, the analogies of the common law regulating the grants of property, and the executions of powers of appointment in relation to property are resorted to and relied upon as giving the proper rule by which to determine its sufficiency. Ancient customs as well as special statutes not unfrequently controlled. (*Saunders* v. *Owen*, 12 Mod., 199; *Craig* v. *Norfolk*, 1 Mod., 122.) The right to exercise a public office, and to receive the emoluments may be a species of property with us, but cannot properly be termed an hereditament. (*Conner* v. *Mayor*, etc. 1 Seld., 285.) The Constitution and the laws of the State create or provide for the creation of all offices, and prescribe the mode of election or appointment, the terms and duration of office, as well as regulate the duties and emoluments. Offices in certain cases, may be for a term of years, during the pleasure of the appointing power, or during good behavior; but whatever may be the term or tenure of office, the appointment must be in conformity with the statutes of the State. An appointment in the general sense of the term may be by deed or in writing without seal or verbal, depending upon the subject-matter of the appointment and the terms of the authority under which it is made. But an appointment to office by the person or persons having authority therefor, as distinguished from an election, can only be made verbally, and withou'; writing when.permitted by the terms of the statute conferring the power. Affecting the public, and not merely private rights, and being done under the authority of the sovereign power and not under individual authority, it should be authenticated in a way that the public may know when and in what manner the duty has been performed.

A right to an office by election may be perfect when the votes have been cast and canvassed, and the result certified according to law, but then a commission or the duly authenticated certificate of the result as the substitute for a commission is the highest and best evidence of the title. An appointment by the executive by and with the advice and consent of the Senate, is only evidenced by the commission; as the executive may decline to make the appointment and to issue the commission notwithstanding the advice and consent of the Senate. (2 Story on Const., § 1546.)

It is quite evident that no verbal declaration of the executive would perfect the appointment. The nomination is but the naming of the person as suitable to be appointed; the action of the Senate is merely the advise and consent of that body that the appointment be made; and the appointment is then made and is evidenced by the commission. The act of signing the commission completes the appointment as well as perpetuates the evidence of it. From that time only is the act irrevocable. (1 R. S., 117, §§ 11–14; *Marbury* v. *Madison*, 1 Cranch, 137.) The statute (1 R. S., 118, § 19) clearly contemplates a commission, the form of which is not prescribed, which shall be the conclusive evidence of an appointment to a civil office. The article in which the section is found is entitled, " Of nominations to offices and the commissions of officers," and after making provision for officers appointed by the Governor and Senate, and by the Governor, and all the elective officers, and commissioners of deeds (then appointed by the county judges and boards of supervisors in joint convention), it provides in the last section that " the commissions for all other offices, when no special provision is made, shall be signed by the presiding officer of the board or body, or by the person making the appointment." The language includes every civil office within the State not excepted from its operation by statute, and was clearly intended to prescribe the mode of appointment. The appointment under this delegated authority is inchoate until the last act to be done by the appointing power is com-

pleted, and that is the signing of the writing or the commission. The appointment is then, and not before, " evidenced by an open unequivocal act." Ch. J. Marshall in *Marbury* v. *Madison* (*supra*), says: " Some point of time must be taken when the power of the executive over an officer not removable at his will must cease; that point of time must be when the constitutional power of appointment has been exercised; when the last act required from the person possessing the power has been performed. The last act is the signature of the commission." It is not discretionary with a person having the power to appoint to office, whether there shall be a commission; the signing of the commission is an integral part of the duty of the delegated power, and necessary to a perfect and and complete execution of the power entitling the appointee to assume the duties of the office. (*People* v. *Van Slyck*, 4 Cow., 297), does not bear upon the question in hand. It related to the designation of one of several town inspectors of election to act as a messenger to deliver the canvass to the board of county canvassers, and it was held that the authority should have been respected on several grounds, none of which by the remotest analogy sanctions the validity of a verbal appointment to office, or gives color to the idea that the mayor of Lockport, meeting three reputable freeholders of the city, might say to them: " I appoint you three gentlemen commissioners of excise for this city. Go take the oath of office and enter upon its duties," and that this would be a good . appointment in virtue of which the incumbents could be ousted. (*Saunders* v. *Owen*, 2 Salk., 467; 12 Mod., 199, and reported in the Common Pleas as *Owen* v. *Saunders*, 1 Ld. Ray, 158), is relied upon to sustain the title of the relators to the office in dispute. The facts of the case are more nearly like those in *People* v. *Fitzsimmons*, than to the case before us. The Earl of Winchelsea, as *custos rotulorum*, having the power to appoint a clerk of the peace for the county of Kent, had, by writing under his hand and seal, appointed the plaintiff to be the clerk of the peace *durante bene placito*,

which the justices of the peace at the sessions refused to recognize, the validity thereof being disputed, whereupon, at the next general session of the peace, the earl came into court and the writing was read in court, and the earl with-out reference to the writing, said : "I do nominate and appoint the said P. Owen to be the clerk of the peace according to the act of Parliament," and Owen was admitted ; but upon the death of the Earl of Winchelsea, the Earl of Rumney, as the then *custos rotulorum*, appointed Saunders to the office of clerk of the peace, and it was held that the appointment of Owens was valid as an appointment, not during the pleasure of the Earl of Winchelsea, but *quamdiu bene gesserit*, as required by the act of Parliament (1 W. & M.), regulating the term of office. The King's Bench reversed the judgment of the Common Pleas, but was, in turn, reversed by the House of Lords, and the judgment of the Common Pleas, as reported by Lord Raymond, affirmed. The reasons assigned for the judgment are entirely inapplica-ble to any question that can arise under our system of gov-ernment. Notice is taken of the use of the two words found in the statute, " nominate " and " appoint," and an argument is based upon the act of nomination, which could be by parol. It is also said, that before the act of 37 H., 8, ch. 1, the clerk of the peace was constituted by parol only, and without deed, as was implied by the preamble using the words " nominate and appoint." The origin of the office was said not to be very clear, but it was thought probable that, at the first, the conservation of the rolls was committed to one of the justices, who was thereupon called *custos rotul-orum*, and that by consent of his brethren he nominated the clerk of the peace. The statute of W. & M., using the same words, " nominate and appoint," which were used in 37 Hen., 8, from which it was implied that before that time the nomination had been by parol, was expounded according to the exposition of the common law; so, that since the new law, a nomination by parol was held good, notwithstanding the office was by it made a freehold. The decision was upon

the construction of the statute of Hen., 8, and W. & M., and they were interpreted by references to what was supposed to have been the prior usage.   This case certainly throws no light upon the common law, nor aids us in determining what would be a good appointment to office either at common law or under our statutes.   It is clearly implied from *Hunt* v. *Ellisden* (2 Dyer, 152 *b*), that an appointment to office by parol, or in any way except by deed, is not valid, unless made so by statute or usage. In *Curles' Case* (11 Coke, 2 *b*), it was resolved that the nomination by the King, of Auditors of the Court of Wards ought to be under the great seal of England, and not by word, nor by the privy seal, etc.

In *Craig* v. *Norfolk* (1 Mod., 122), the plaintiff claimed under a patent, and the question was upon his seizin in fact of the office in controversy.   Statute or usage is necessary to authorize an appointment other than by writing.   The common law does not speak upon the subject.   The king cannot grant ancient offices in other manner or form than was usual, if the form be not altered by Parliament, as creating by writ, when before it was by patent.   (Com. Dig., Officer [A].)   *Johnston* v. *Wilson* (2 N. H., 202), related to an elective office, and Mr. Justice WOODBURY says: " On general principles, the choice of a person to fill an office constitutes the essence of his appointment.   After the choice, if there be a commission, an oath of office, or any ceremony of inauguration, these are forms which may or may not be necessary to the validity of any acts under the appointment, according as usage and positive statute may or may not render them indispensable."   But in the case of an appointment by one representing the public, the choice can only be made under our statute by the commission by which it is evidenced.   That is the making of the choice; the act which is effectual, as unequivocal and final.

The relators have no title to the office in dispute.   The defendants hold office by statute " until others shall be appointed in their places."   No such appointment has been

made, and they have not resigned, or in any way vacated their offices. They could not, by their act or assent, transfer the office to the relators, or relieve themselves, except in one of the ways designated by statute. (*Johnston* v. *Wilson, supra*, 1 R. S., 122, § 34.)

The office is not vacant, and the defendants are the legal incumbents. The judgment must be reversed, and judgment given for the defendants.

All concur.

Judgment accordingly.