## ISAAC H. COTANCH, RESPONDENT, *v.* WILLIAM M. GROVER, APPELLANT.

*Street commissioner of a village — what evidence of his authority to act is sufficient.*

Where, at a meeting of the board of trustees of a village, incorporated under chapter 291 of the Laws of 1870, a person is appointed street commissioner thereof, and the president and clerk of the village are authorized to give the commissioner orders on the treasurer for such amount as he needs from time to time, and a bond is given by the commissioner, with a sufficient surety, for the faithful performance of the duties of that office, which is approved and is filed with the clerk of the village, and the person so named as street commissioner takes the oath of office, and, in fact, performs the duties of such office, he becomes a *de facto* street commissioner, and it is not necessary that any commission should be actually issued to him as street commissioner.

*Semble,* that the action of the board of village trustees, evidenced by a resolution appointing a street commissioner, is sufficient authority to the commissioner to act when the oath of office is taken and the bond is given as prescribed by law. *People ex rel. Babcock* v. *Murray* (70 N. Y., 521) distinguished.

APPEAL by the defendant William M. Grover from a judgment of the County Court of Tompkins county, entered in the office of the clerk of said county on the 4th day of January, 1890, with notice of an intention to bring up for review, upon such appeal, the order denying a motion for a new trial, made on a case containing exceptions, and entered in said clerk's office on the same day.

The action was tried at a term of the County Court, held at the city of Ithaca, in Tompkins county, on May 16, 1889, at which a verdict was rendered by the jury, in favor of the plaintiff, for fifty dollars damages.

The action was commenced in a Justice's Court and a verdict was rendered for the plaintiff, and an appeal was taken to the County Court where a new trial was had.   In the complaint it is alleged

that the plaintiff is the owner of certain premises therein described, situate in the village of Freeville, in the town of Dryden, on the north side of the highway running east and west in said village; and that the " premises are adjacent to and facing the said road, but on a slight elevation, which was sustained by a natural grade or slope to the said street ; that the defendant, on or about the first of September, 1888, and at divers times prior and subsequent thereto, wrongfully dug up, and caused to be dug up and carried away from plaintiff's premises, within the limits of said street, large quantities of soil and dirt, for a distance of eight or ten rods, or thereabouts, in front of these premises, and cut down a deep excavation the whole length of the premises and about three or four feet deep, leaving a gully there, to within about three or four feet of the plaintiff's fence; that the said soil and earth was carried to places in said village a long distance from plaintiff's premises, and used for private individuals as well as for the highways; that it was not necessary to take away plaintiff's soil and earth and damage his property, there being other accessible dirt that was nearer by ; that the aforesaid excavation and carrying away of plaintiff's earth and soil has caused large damage to his premises, rendered them inconvenient by way of ingress and egress, and lessening the value thereof."

The answer contained a denial and alleged that the defendant at all the times mentioned in the complaint " was the street commissioner of the village of Freeville, a domestic municipal corporation duly organized and created under and by virtue of the laws of the State of New York ; that the premises and the highway mentioned in said complaint are both within the corporate limits of the said village of Freeville; that whatever the defendant did in working on said highway and in moving earth and gravel thereon and in front or near the premises described, at the time and times mentioned in said complaint, he did while he was the duly appointed and qualified street commissioner of said village of Freeville, and in his capacity as such commissioner, and under the authority and direction of the trustees of said village of Freeville, and not otherwise."

*Almy & Bouton,* for the appellant.

*Lester D. Mallery* and *S. D. Halliday,* for the respondent.

HARDIN, P. J.:

Whether the defendant was a street commissioner of the village of Freeville at the time of making the excavations, referred to in the pleadings, or not, was made a conspicuous question upon the trial of the issue. The defendant insisted he was *de jure* commissioner, and he also asked the court to hold that he was *de facto* street commissioner. The plaintiff claimed the converse. The court declined to charge that "the defendant, in doing the work complained of, was the *de facto* street commissioner of the village of Freeville, and acted under the lawful direction of the board of trustees of the said village." Defendant took an exception to the refusal to charge. The court charged: "That he was not an officer under the law as it stands."

Upon the trial the clerk of the village was called as a witness, and he identified the books of records, kept by him as such clerk, of the proceedings of the board of trustees of the village of Freeville. The minutes were put in evidence, and from them it appeared that William H. Richardson, Orson Luther, George T. Card and Byron Brewer were elected, respectively, president and trustees on the 2d day of July, 1887. There was a meeting of the trustees held on the 5th of July, 1887, at the office of President Richardson, when Brewer and Luther were present as trustees, and at that meeting G. M. Watson was unanimously chosen clerk, and the board adjourned to the sixth day of July; and the minutes indicate that "Trustees Brewer, Luther and Card, having duly qualified, were present, and President Richardson was in the chair; after transacting some business the board adjourned to the eleventh of July.

On the 20th of March, 1888, a regular annual election was held, and W. H. Richardson was elected president, and Hill and Grover were elected trustees.

On the 27th of March, 1888, the first meeting of the board of trustees was held in the office of the president, and Hill, Grover and Card were present, and the president was in the chair. By the minutes of that meeting it appears that "E. F. George was appointed clerk, and William Grover was appointed street commissioner. * * * Motion made and carried that the president and clerk be authorized to give commissioner orders on treasurer for such amount as he needs from time to time."

April 2, 1888, another regular meeting of the board of trustees was held and the minutes of the preceding meeting were read and approved; and it appears by the minutes kept of the meeting held on April 2, 1888, viz. : " Motion made and carried that the bonds of N. H. Thompson and William Grover be accepted."

Another regular meeting was held on May 7, 1888, and the minutes thereof contained the following entry : ." Minutes of last ·meeting read and approved."

Defendant offered in evidence a bond executed by him and George M. Watson as surety, which bond was in the penal sum of $400, and the condition of said bond was as follows: " The condition of this obligation is such that if the above bounden William M. Grover, who has been appointed street commissioner of the above-named village, does faithfully perform the duties of said office without fraud or delay, then the preceding obligation to be void, otherwise to remain in full force and virtue."

The defendant also put in evidence a bill of Grover as street commissioner of the village of Freeville, filed September 11, 1888, which contained items for labor performed and materials furnished during the months of June, July, August and September. The verification of the said account among other things contained the following language, viz. : " W. M. Grover being duly sworn, says he is street commissioner of the village of Freeville; that the within report of labor performed on the streets of said village is in all respects correct." * * * The affidavit was subscribed: " W. M. Grover, street commissioner," and sworn to the 11th day of September, 1888, before Edgar F. George, village clerk.

Edgar F. George was called as a witness and, among other things, testified: " I kept these minutes on this page 39 ; it simply says 'William Grover was appointed street commissioner.' I do not recollect whether it was done by motion or otherwise. * * * I was acting as clerk of that meeting."

George T. Card was called as a witness and testified that : " I have been trustee of the village for two years, beginning in the spring of 1887. The other trustees for 1888 were John S. Grover and O. H. Hill. Only two elected that year. " Think I was present at the first meeting of the board after the election of 1888. *Was present when Mr. Grover was appointed street commissioner.* There was

a motion made and a vote taken to appoint Mr. Grover, and it was pronounced carried by the president. Think I was present when Mr. Grover's bond was presented. Can't positively recollect in regard to the bond; my impression is that it was presented and approved." Thereupon Edgar F. George was recalled and testified: "Mr. Grover's bond as street commissioner was filed with me as clerk of the village, April 2, 1888."

Thereupon George T. Card was recalled as a witness and testified, viz.: "After the appointment of Mr. Grover as street commissioner, his taking the oath of office and filing his bond, the board of trustees took action in regard to this excavation of the street in front of Mr. Cotanch's place; can't recollect the date, but should think it was in May; all the trustees, Hill, Grover and myself, were present; William Grover was present also; what we did in reference to the highways in general was that Mr. Hill took his two-seated democrat wagon and his horse and took the other trustees and myself and William Grover, and started from about the center of the village over the roads to see where there were places that needed repairing, and to instruct the commissioner what to do in different places, and we went down to this place in front of Mr. Cotanch's house and looked that road over; there was a knoll there in the road commencing about in front of the church and slowly raising to in front of Mr. Cotanch's house, and then sloped off toward the railroad to the west; we were there in the wagon and I can't remember just the words that each one said to the other; I can remember the general decision of the three as we were together, but can't remember the exact words; I told them how I thought the dirt ought to be taken out to improve the road, about how wide and about how long, where to begin and where to end; we had a tape line and we measured to get the width of the road at that point, and I told them about where I thought it ought to be taken out to make the road better at that point, and that we could use the dirt in filling up in other places; * * * after I had made this statement to the other trustees as to what my judgment of the improvement to be made was, they said they thought that would be an improvement to the road and that we could use the dirt we took out of that place to fill low places or other places in the road, and be a general improvement; we showed Mr. Grover about how deep to take the

dirt out and about how wide; I don't think we told him just what place to begin; I think we told him how much dirt to take and how deep to take it, and how deep to leave it after it was finished; * * * I saw the work during its progress; Mr. Grover commenced near the corporation line and ploughed on the south side of the road; ploughed quite a little wider than the beaten path, clear to the edge of the bank; there was quite a steep bank on that side, slanting off towards the swamp; * * * after the completion of this work Mr. Grover was paid by the village for his work and the money he had expended there."

Freeville was incorporated under "An act for the incorporation of villages," passed April 20, 1870, chapter 291 of the Laws of that year. In title 2, section 1 of the act, it is provided, viz.: "The officers of a village incorporated under this act shall be as follows, unless otherwise herein directed: A president, three trustees, a treasurer, a clerk, a collector and a street commissioner." Section 3 provides: "The clerk and street commissioner shall be appointed annually by the board of trustees." Section 5 provides: "All officers elected or appointed under this act shall hold their respective offices one year, unless sooner removed or disqualified, and until their successors shall be elected or appointed and qualified." Section 7 provides, viz.: "Every person elected or appointed to office under this act, who shall neglect to file the oath of office hereinafter required for five days after personal notice, in writing, from the inspectors of election or the village clerk, of his election or appointment, shall be deemed to have declined the office, and his place may be filled as in case of a vacancy." Section 11 provides that the street commissioner, before entering upon the duties of his office, shall "execute and file with the village clerk a bond to the village, in such a sum and with such sureties as the board of trustees shall approve." And section 12 provides for the oath of office.

Subdivision 25 of section 3, title 3 confers upon the trustees power to keep the roads, avenues, streets, lanes, public buildings and public places of the village in good repair, order and condition."

In title 8, section 13, it is provided as follows: "The board of trustees shall cause to be kept a record of its proceedings."

The act nowhere prescribes a commission to be issued to a street commissioner. We are inclined to think that there is no custom in

municipalities organized under that statute to issue a formal commission. The action of the board of trustees, evidenced by resolution appointing such subordinate officers, seems to be regarded as sufficient authority for commissioners to act after the oath of office and bond are made and given as prescribed by the act.

Our attention is called to the *People on the Relation of Babcock* v. *Murray* (70 N. Y., 521), which is to the effect that an appointment of excise commissioners verbally is not sufficient. That case contains an intimation that the appointment of civil officers may not be made verbally, save where permitted by the terms of the statute conferring the appointing power, and that in the absence of such permission there must be a commission, a formal writing signed by the official with whom the power of appointment rests, showing clearly his intention to appoint the person named. We think that case does not sustain the contention of the plaintiff. The evidence in that case disclosed the fact " that the only action of the mayor was a verbal nomination of the relators to the common council for appointment to the office. The vote of the common council and the record of their action upon the nomination must be laid out of view as *ultra vires* and without efficiency. They add nothing to the verbal declaration and statement of the mayor, and the claim is that such nomination was a verbal appointment of the persons named to the office, the completed act of the mayor making the appointment; that an appointment by parol, without writing, is a valid exercise of the power to appoint, and this proposition must be sustained or the respondents cannot hold their judgment." In the course of the opinion delivered in that case ALLEN, J., refers to *Johnson* v. *Wilson*, 2 N. H., 202), which was a case relating to an elective office, and in deciding that case, WOODBURY, J., says: " On general principles the choice of a person to fill an office constitutes the essence of his appointment. After the choice, if there be a commission, an oath of office, or any ceremony of inauguration, these are forms which may or may not be necessary to the validity of any acts under the appointment, according as usage and positive statute may or may not render them indispensable." We think in the case before us the clear evidence of the defendant's title to the office, and right to administer the same, were made apparent by the resolution adopted by the board of trustees appointing him, by his oath of

office and his bond duly approved by the trustees and filed with the records of the corporation. We are also of the opinion that the plaintiff cannot successfully question the defendant's title to the office upon the evidence furnished upon the trial. (*Foot* v. *Stiles,* 57 N. Y., 399; *Dolan* v. *Mayor,* 68 id., 274; *Morrison* v. *Sayre,* 40 Hun, 465.)

(2.) If the removal of the earth in front of the plaintiff's premises was made for the purpose of improving the street or highway by the village authorities, and for no other purpose, and they acted in good faith in such removal with a view to benefit the public; their action was within their corporate powers; however, if they made such removal for the purpose of obtaining the earth and soil and gravel, and appropriated it to their own use or the use of the corporation in other localities, their action in so doing cannot be justified. In *Robert* v. *Sadler* (104 N. Y., 229) the rule is stated as follows : "Where the public have taken an easement for a street or highway and the surface of the land is above the grade of the highway so that, in order to reach the grade line it is necessary to remove the superincumbent material, this may be used on other portions of the road on the premises of other landowners, but the public easement justifies only the taking of earth and soil which the process of construction or repair requires and necessarily compels to be removed." That case was followed in *Ladd* v. *French* (24 N. Y. St. R., 952), in which latter case it was said : "Gravel cannot be dug from between the traveled part of a public highway and the fence of an adjacent owner for the purpose of improving the road at a spot other than that from which it is taken."

There was a conflict in the evidence, in respect to the purposes in view, in making the removal of earth and gravel. Some of the evidence quite clearly indicates that it was removed from the plaintiff's premises for the purpose of improving the highway. Some of the evidence quite clearly indicates that it was removed for the purpose of appropriating the material by the corporation through its officers to the use of other streets. We forbear to express any conclusion upon the weight of the evidence, as the views we have already expressed in respect to the appointment of the street commissioner renders another trial necessary.

We think the ruling of the court at the trial, and the positions

taken in the charge upon the requests, and refusal to charge upon the subject of the defendant's title to the office of street commissioner, were prejudicial to the rights of the defendant. We are, therefore, of the opinion that the judgment and order should be reversed and a new trial ordered.

Martin and Merwin, JJ., concurred.

Judgment and order of the Tompkins County Court reversed upon the exceptions and a new trial ordered, with costs to abide the event.