THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.*
CLARENCE L. FISHER and FLORENCE FISHER JACKSON,
Appellants.

Fourth Department, October 1, 1919.

**Eminent domain — condemnation of lands for Forest Preserve —
consent of Governor prerequisite — written consent essential.**

The exercise of the right of eminent domain must be in strict conformity
with the terms of the statute conferring the right.

As the statute (Laws of 1901, chap. 94) authorizing the condemnation
of land for the State Forest Preserve provides that land shall not be
acquired " except with the consent of the Governor," such consent is
necessary to the validity of a condemnation, and, the consent being juris-
dictional, it must be obtained before the filing and service of the notice in
the proceeding.

The consent of the Governor necessary to give validity to such proceeding
should be formal and in writing, and a mere verbal statement by the
Governor made to one of the Commissioners that the land should be
acquired is not the consent required by the statute and is insufficient
to validate the condemnation.

DE ANGELIS, J., dissented.

APPEAL by the defendants, Clarence L. Fisher and another,
from a judgment of the Supreme Court in favor of the plaintiff,
entered in the office of the clerk of the county of Herkimer
on the 28th day of March, 1917, upon the decision of the
court after a trial at the Herkimer Special Term.

The judgment decreed that the People of the State of New
York were the owners of the land described in the complaint.
The State based its claim of title upon a proceeding taken
by the Forest Purchasing Board to acquire the land in
question. The court found that the proceedings of the Forest
Purchasing Board were in accordance with the provisions of
the statute and that the State acquired a good title.

The opinion of the Special Term is reported in *People* v.
*Fisher* (98 Misc. Rep. 131).

*Purcell, Cullen & Purcell* [*Elon R. Brown* and *Henry Purcell*
of counsel], for the appellants.

*Charles D. Newton, Attorney-General* [*A. F. Jenks, Deputy
Attorney-General,* of counsel], for the respondent.

HUBBS, J.:

By chapter 283 of the Laws of 1885 the Legislature of the State created the Forest Preserve. That act established the policy of the State to conserve the wild forest lands and protect the head waters of the chief rivers of the State. The law was amended from time to time for the purpose of carrying out such policy.

By chapter 220 of the Laws of 1897 the Forest Preserve Board was given the power of eminent domain. That law also defined the powers and duties of the Board. Prior to its passage the Board had had power to acquire land solely by purchase. By chapter 94 of the Laws of 1901 the powers of the Forest Preserve Board were transferred to a new Board to be composed of the Forest, Fish and Game Commissioner and two Commissioners of the Land Office to be designated by the Governor. The powers of the new Board were the same as those of the Forest Preserve Board as defined in said act of 1897, chapter 220, except that the act of 1901, chapter 94, provided that " Lands shall not be purchased or acquired * * * except with the consent of the Governor." Prior to the taking effect of the last-mentioned act the consent of the Governor had not been necessary in the acquisition of lands by the Board.

By chapter 130 of the Laws of 1908, known as the Forest, Fish and Game Law (Gen. Laws, chap. 31), a Forest Purchasing Board, consisting of three members, the Forest, Fish and Game Commissioner and two Commissioners of the Land Office to be designated by the Governor, was created with the same power to acquire land that was formerly possessed by the Forest Preserve Board. Section 44 of said act provided that " Lands shall not be purchased or acquired * * * except with the consent of the Governor."

In January, 1909, the Forest Purchasing Board took proceedings to acquire the title to the lands involved in this litigation. The Board attempted to follow the provisions of the statute and in pursuance thereof took possession of the lands in question. The owner of the lands, the defendants' testatrix, protested that the proceedings of said Board were not in accordance with the provisions of the statute and that the State did not, by such proceedings, acquire title to said lands.

This action was brought by the State to obtain a judicial determination as to the validity of the State's title to the lands. The trial court has found that the State acquired title by the proceedings of the Forest Purchasing Board and judgment has been entered in favor of the State.

We are unable to agree with the conclusion of the Special Term that the Forest Purchasing Board fully complied with the provisions of the statute and that title to said lands passed to the State.

In the first instance, it is necessary to keep in mind that the Forest Purchasing Board was acting under the provisions of the statute in attempting to deprive the owner of title to the lands in question. It was attempting to acquire title against the will of the owner. While it may be that it was for the best interests of the State that the lands in question should be acquired, it must be remembered that the exercise of the right of eminent domain is a harsh remedy and must be exercised in strict conformity with the terms of the statute conferring the right. A statute giving the State the right to deprive a person of his property against his will must be strictly construed and every jurisdictional provision of such a statute must be complied with. (*Sharp* v. *Speir*, 4 Hill, 76; *Matter of Water Commissioners of Amsterdam*, 96 N. Y. 351.)

Several reasons are assigned by the appellants upon which it is urged that the judgment herein should be reversed. As we have reached the conclusion that the proceeding taken by the Forest Purchasing Board to acquire the title to the lands in question was fatally defective because of the failure of the Governor to give an official consent thereto, we do not deem it necessary to refer to the other questions raised.

It was conceded upon the argument and is conceded in the brief filed by the Attorney-General that the provision of the statute requiring the consent of the Governor was a mandatory provision and that his consent was necessary to confer jurisdiction upon the Forest Purchasing Board to acquire the title to the lands in question. It seems to us that there can be no dispute about that. The provision of the statute is plain and clear. It reads: " Lands. shall not be purchased or acquired   *   *   *   except with the consent of the Governor."

Section 47 of said act reads as follows: " Upon the request of said Board an accurate description of such lands so to be appropriated shall be made by the State Engineer and Surveyor, and certified by him to be correct, and said Board or a majority thereof shall indorse on such description a certificate stating that the lands described therein have been appropriated by the State for the purpose of making them a part of the Adirondack or Catskill parks; and such description and certificate shall be filed in the office of the Secretary of State. Said Board shall thereupon serve on the owner of any real property so appropriated a notice of the filing and the date of filing of such description and containing a general description of the real property belonging to such owner which has been so appropriated; and from the time of such service, the entry upon and appropriation by the State of the real property described in such notice for the uses and purposes above specified shall be deemed complete, and thereupon such property shall be deemed and be the property of the State. *Such notice shall be conclusive evidence of an entry and appropriation by the State.*"

It will be noted that " such notice shall be conclusive evidence of an entry and appropriation by the State " and that, upon complying with said statute, " the real property described in such notice * * * shall be deemed and be the property of the State." From the reading of said section it would seem clear that whatever jurisdictional steps were necessary to be taken must have been taken before the filing and service of said notice. The question is presented, therefore, whether or not there was an official consent given by the Governor to the acquisition of said lands before the filing and service of said notice.

There is no dispute about what took place. The only question is whether or not that which took place constituted a consent by the Governor within the meaning and intent of the statute.

On January 19, 1909, the Forest Purchasing Board took final action in the proceedings to acquire the land in question. Prior to that time one of the members of the Board called upon the Governor and laid before him the situation in regard to these lands. The Governor stated that the lands should be

acquired at once.    He also made the same statement to another member of the Board on another occasion.    He stated, in substance, that it was desirable to acquire the land at once. This is all the evidence there is of a consent by the Governor to the action of the Forest Purchasing Board in its effort to acquire the lands under the provisions of the statute.

No record was made of such conversation; the Governor did not meet with the Forest Purchasing Board; and no entry was made in any book or record showing a consent by the Governor.    So far as appears the conversations with the Governor were entirely informal and there is nothing to indicate that the Governor supposed that he was giving the formal consent required by the statute.    It does not seem to us that such a consent is the consent required by the statute as a basis for acquiring the title to thousands of acres of valuable land.

If the consent of the Governor was necessary to give validity to the proceeding, as we believe that it was, it does not seem to us that the evidence of such consent should be permitted to rest in parol.    If the fact of the Governor's consent could be proved by evidence of his oral statements, then the title to all lands acquired under this and like statutes might depend upon the uncertain recollection of witnesses, subject to mistakes and misunderstandings.    It might also have to be determined from a conflict of evidence.    It is conceivable that a case might arise where the Governor would testify that he did not give his consent and the members of the Forest Purchasing Board would testify that he did.    Such a situation would lead not only to uncertainty and confusion in titles but to public scandal and loss of faith in the government itself.

It is true that the statute in question does not by its terms require the consent of the Governor to be in writing or provide how such consent shall be given, filed, entered or recorded.    It does not follow, however, that any kind of consent is sufficient to constitute a compliance with the statute.

There are many provisions contained in constitutions and statutes providing for the consent of the Governor, mayor, Legislature, commissions and boards.    The following expressions are frequently used: " when approved by; " " subject to approval of; " " upon the approval of; " " with the approval

of; " " with the advice and consent of; " " without the consent of; " " with the consent of; " and " unless * * * shall consent thereto." So far as we are informed, the courts have never held that such provisions could be construed to mean an informal oral consent or approval, which could be proved by parol evidence.

To permit a citizen to be deprived of his title to real property upon the unofficial oral statement of the State Executive would be to place a construction upon the statute in question entirely in conflict with the development, history and spirit of our system of jurisprudence. It is elementary that the history of constitutional development shows the constant hemming in and limiting of executive absolutism. English constitutional history is replete with instances of the limitations of arbitrary authority of the Crown. Before an executive act under our form of government can have the force of law it must appear that the act is authorized by law and that it is done in accordance with the law. In our jurisprudence the unofficial oral statement of an executive does not have the force of law. Where the executive is required to perform an act in order to confer jurisdiction, such act is an official act which must be performed in such manner that there can be no doubt or mistake about what it is or what its meaning is. It should be a matter of record and not rest in parol.

It was held in the case of *People ex rel. Babcock* v. *Murray* (70 N. Y. 521) that an attempted oral appointment by a mayor of a person to the office of commissioner of excise was void. The reasoning of Judge ALLEN in that case is applicable to the question involved in the case at bar. In his opinion he said: " It would be unfortunate if the title to office of one upon whose official acts public interests and private rights hinged, did or could be made to depend upon the verbal declarations and statements of the person having the power to make the appointment, to be proved by parol and liable to be forgotten, misunderstood or misreported, subject to all the contingencies and infirmities which are incident to verbal evidence, or evidence by parol, so pregnant of mischief and misfortune as to have led to the enactment of the Statute of Frauds. It will not be presumed that the Legislature, while making void contracts involving trifling pecuniary interests

unless evidenced by some writing, intended that important civil offices should be conferred without a commission or any writing, but simply by a verbal statement of an individual in any form which by the bystanders should be understood as expressing a present intent to make the appointment; and a liberal interpretation will be given to the statutes bearing upon the subject if necessary to avoid any such conclusion. * * * But an appointment to office by the person or persons having authority therefor, as distinguished from an election, can only be made verbally, and without writing, when permitted by the terms of the statute conferring the power. Affecting the public, and not merely private rights, and being done under the authority of the sovereign power and not under individual authority, it should be authenticated in a way that the public may know when and in what manner the duty has been performed."

The attempted appropriation of the lands in question was undertaken without jurisdiction and the proceeding did not vest the title in the State. The trial court has expressly found that the only consent given by the Governor was the oral consent referred to herein, and it was stated by counsel upon the argument that evidence could not be given by the State of any other consent. Under such circumstances a new trial would be a useless formality. The complaint is dismissed, therefore, with costs of the trial and of this appeal. The fourth, fifth, sixth and seventh conclusions of law found by the trial court are disapproved and reversed and judgment is directed for the defendants.

All concurred, except DE ANGELIS, J., who dissented and voted for affirmance.

Judgment reversed, with costs, and complaint dismissed, with costs.