[No. 1418.]

THE STATE OF NEVADA, ex rel. JAMES GUINAN, RELATOR, v. JOHN P. MEDER, JOHN T. JONES AND A. CUTTS, RESPONDENTS.

(Syllabus by BIGELOW, J.)

1—SCHOOL TRUSTEES, LONG AND SHORT TERM.—The office of long-term school trustee is separate and distinct from that of short-term, and a certificate of appointment which does not state that it is for the long term is insufficient to entitle the appointee to that position.

2—OFFICIAL APPOINTMENT, TO BE IN WRITING.—An appointment to a public office must be in writing.

3—ELECTION, RESULT OF, HOW DECLARED.—The legislature has power to provide for the manner in which the result of an election shall be determined and declared, and their enactment in reference thereto is binding.

4—CANVASSERS, BOARD OF, FAILURE TO CANVASS VOTES, AND ISSUE CERTIFICATE, FATAL TO RIGHT TO HOLD OFFICE.—The relator claims to have been elected long-term school trustee at the general election held in November, 1892, by virtue of having received a majority of the votes cast at that election, but which were not canvassed by the board of county commissioners, nor any certificate of election issued as provided by Gen. Stats., sec. 1304. He also claims that Stats. 1891, 93, changing the election of trustees from November to May of that year, are unconstitutional, and consequently that his election in November was legal. *Held*, that, without regard to the constitutionality of the act of 1891, the failure of the board to canvass the votes and issue a certificate is fatal to his right to hold office.

5—CONSTITUTIONAL QUESTIONS, WHEN NOT PASSED UPON.—It is a well-known rule of courts never to pass upon a constitutional question unless it is clearly involved and a decision thereon is necessary to a determination of a case.

ORIGINAL PROCEEDING on information in the nature of *quo warranto*.

At the general election held in November, 1892, the relator was a candidate for the position of long-term school trustee of Carson school district, and received a majority of the votes cast for that position. There was, however, no notice given that the trustees were to be elected at that election, and the vote therefor was not canvassed, nor any certificate of election given to him; Stats. 1891, p. 93, then providing that trustees should be elected in May of that year. In January, 1893, believing, as the information states, that there were doubts of the validity of the election, the district attorney of Ormsby county, as ex officio superintendent of schools, appointed him to the position for which he had been a candidate at the election. The certificate of appointment read as follows: "I, * * * do hereby appoint James Guinan a school trustee for school district No. 1." Upon this appointment he took the oath of office, and continued to discharge the duties of the position until June, 1894, when the superintendent appointed the respondent Cutts as his successor. Cutts had also been elected a trustee for the unexpired term at the school election held in May, 1894.

*H. F. Bartine,* for Relator:

Relator offered to show by parol that his appointment was intended for the long term. The introduction of parol evidence for such purpose was objected to by respondent. The parol evidence is clearly admissible. It is not intended to contradict or vary the written instrument or to show anything inconsistent with its language. As a matter of law, of which the court will take cognizance, there are two official terms of school trustee; one for two years and one for four years. This appointment fails to specify which was intended, the longer or shorter term. Its language applies with equal propriety to either. Hence arises a latent ambiguity which can be removed by parol. (Greenleaf on

Ev., vol. 1, sec. 297; Am. & Eng. Ency. of Prac. of Law, vol. VII., p. 93; Wharton on Ev., 937–940.)

Where a name in a written instrument applies equally to two persons, parol evidence is admissible to show which was intended. (Abbott's Trial Ev., pp. 136–37–40.) The same doctrine as to two parcels (pp. 145–6). See general statement of the rule on p. 294.

Parol evidence is admissible to identify either persons or things ambiguously described. (Rice on Ev., pp. 219, 264, 276, 318; *McLennan* v. *Grant*, 36 Pac. 682; 8 Wash. 603; *Thompson* v. *Southern*, 82 Cal. 497; 131 Mass. 179; 72 Mo. 570; 18 S. W. 587; 116 Ind. 356; 75 Ala. 209.)

Parol proof is equally admissible to supply omissions if such proof is not contradictory of the writing. (*Equator M. & S. Co.* v. *Guanella et al.*, 36 Pac. 613; 32 Pac. 571; 97 Cal. 518; 119 N. Y. 593; 32 N. E. 921; 47 Mo. App. 196, 202; 11 N. Y. Supp. 535; 6 Col. 294; 78 Mo. 391; 14 Mo. App. 71; 71 Iowa, 212; 141 Pa. St. 266.)

The acts and admissions of a party to an ambiguous instrument subsequent to its execution are competent against him. (Abbott's Trial Ev., p. 509.)

When a written appointment is silent as to the term parol evidence is competent to show what term was intended. (*State, ex rel. Webster,* v. *Rule* (by Judge Cheney); *State* v. *Fulkerson,* 10 Mo. 681.)

The principle should apply to appointments even more strictly than to written contracts. First, because an appointment to office is a matter that concerns the public, and, however ambiguously an appointment may be worded, the public have a right to know what was actually intended. Second, because the appointee is not in a position to dictate the language of the appointment. Third, because if parol proof is not admissible an officer having the appointing power can violate the law with perfect impunity. Fourth, the denial of the rule for which we contend will throw the door wide open to the most outrageous abuses of the appointing power.

The failure of the notice of the election in November, 1892, to specify school trustees among the officers to be elected did not invalidate the election of such officers. The November election in 1892 was a general election and the law itself was all the notice required. (*Hubbard* v. *Gorin,* 276.)

The duties of the board of county commissioners in canvassing votes are ministerial only. (Paine on Elections, secs. 603, 605, 608, 611; Mecham's Pub. Off., sec. 208; Brightley's Lead. Cases on Elections, pp. 300, 306.)

. The only power of a board of canvassers is to canvass the returns as made by the inspectors of election and from the returns declare the result—that is, what candidate has the highest number of votes. In this case it is a fact admitted in open court that relator had a greater number of votes than any other candidate, which is all that could have been shown by the canvass and the certificate of the board. The board did not decide *against* relator's election except by holding that there was no law for it. This was clearly an assumption of judicial power. It was not necessary for relator to demand a canvass or certificate; it was the duty of the board to make the canvass and issue the certificate.

Relator took peaceable possession of the office and performed its duties unchallenged for a year and five months. A certificate of election is at best only *prima facie* evidence and may be completely overthrown on parol proof. (Brightley's Lead. Cases on Elections, pp. 314, 319, especially note in which the cases are reviewed.)

In election cases the ultimate fact to be determined by a canvass is who had the most votes. In this case that fact is decided in relator's favor by admission in open court. Between the parties this admission is conclusive so far as relator's election is concerned. (47 Kan. 432.)

The oath of office was sufficient. It is evident that relator endeavored to qualify legally. If there is any fault it lies at the door of Superintendent McGowan. (Mecham's Pub. Off., sec. 258; 5 Cal. 106; 6 Utah, 90.) But at the worst the omission only gives rise to an uncertainty as to what office the oath applied to. It is an easy matter to make the application certain. It can be done by parol or by a simple inspection of the appointment. *Certum est quad certum reddi potest.*

Formal defects and even substantial ones in official oaths and bonds have never been held fatal. (*People, ex rel. Brooks,* v. *Watts,* 73 Hun. 407; 97 N. Y. 273; 80 Mich. 265; 45 N. W. 132; 4 Wash. 234.)

The election held in November, 1892, was under the general

school law of the state.    (Gen. Stats. 1304.)    At that time
the general law was in full force and effect.    The act of
March 19, 1891, providing for the election of school trustees
on the fourth Monday of May (Stats. Nev. 1891, p. 93), is
unconstitutional.    The first section creates a term of four
years and six months, which is in excess of the constitutional
limitation.    As this provision cannot be rejected without
leaving the act imperfect and incomplete, the entire act must
fall.    This is settled law.    (*State* v. *Harris*, 19 Nev. 222.)

The attempt to amend the act of 1891 so as to remove this
defect was itself a legislative admission of its unconstitu-
tionality (Stats. 1893, p. 115).    But the original act being
void there was nothing to amend, and the amendatory act of
1893 is equally void.    (Sedgwick Const. Law, p. 143; Cooley
Const. Limitation, p. 469.)

Section 17, article IV., of the Nevada constitution requires
that the subject of every statute shall be expressed in the
title.    The "subject" of an original statute is the matter
which it contains.    The "subject" of an amendatory statute
is the act amended.    In this case the statute amended, being
unconstitutional, was void *ab initio* and never had an exist-
ence as a substantive thing, hence there was no "subject" to
which the amendatory act could refer.    It fails because no
existing "subject" is referred to in the title.    It is clearly
within the analogy of *State* v. *Hallock*, 19 Nev. 384.    There-
fore the election held on the fourth Monday of May, 1894,
was without authority of law and void.

Now when relator's title or right to the office is assailed he
can show any title that he may have.    (*Clarke* v. *Irwin*, 5
Nev. 111, 130.)

If the amendatory act of 1893 (Stats. 1893, p. 115) be held
constitutional, it can in no way affect relator.    The act did
not take effect until March 6, 1893, about four months after he
had been elected and two months after he had been appointed.

An officer can be elected only at the time fixed by law.    (1
Nev. 75; 2 Nev. 351; 33 Neb. 266; 29 Pac. 1118.)

*A. J. McGowan* and *Torreyson & Summerfield,* for Re-
spondents.

(No brief on file.)

By the Court, BIGELOW, J. (after stating the facts):

The question involved in this proceeding is whether the relator or the defendant Cutts is entitled to the position of long-term school trustee of Carson school district No. 1, commencing January, 1893. The relator founds his right thereto both upon an election at the general election of 1892, and upon an appointment made in January, 1893. Upon the hearing he offered in evidence a certificate of appointment as school trustee, but which did not state that it was for the long term. For this reason the court were of the opinion that the certificate did not establish any title in him to the office in controversy; that position being separate and distinct from an ordinary two years term, and the statutes specially providing that it should be known as the "long term." (Gen. Stats., sec. 1304; Stats. 1891, p. 95.)

The relator then offered to prove by parol testimony that the intention of the appointing officer was to appoint him to the long term, and that the understanding was that he had been so appointed. Upon objection the offer was overruled upon the ground that an appointment to an office must be in writing, and cannot be shown by parol. (Gen. Stats., secs. 1658, 1667; *People* v. *Murray*, 70 N. Y. 521.)

He now claims that the statute of 1891 (page 93), providing that trustees should be elected in May, 1892, instead of at the general election in that year, as had previously been the law, was unconstitutional, because it provided for the election of a trustee whose term of office was to be for more than four years; that consequently the trustees were still to be elected at the general election; and, having received a majority of all the votes then cast for long-term trustee, and having taken the oath of office in due time, he is now entitled to hold the position under that election. The information, however, fails to show that any canvass of the votes so cast was ever had, and, so far as the board of commissioners is concerned, it is admitted that none was made.

It is a well-known rule with the courts never to pass upon a constitutional question unless it is clearly involved, and a decision thereon is necessary to the determination of a case. Accordingly, we do not do so here, because, aside from the

constitutionality of the statute of 1891, we are of the opinion that the failure to canvass the votes cast for trustees is fatal to the relator's claim thereunder. It will not be contended that it was not within the power of the legislature to provide the manner in which an election shall be held, and the result determined and made known. Any reasonable regulation adopted for the purpose of obtaining an orderly and definite settlement of the result would certainly be binding. Even if the statutes were not clear upon the point, a due regard for good order and the proper regulation and administration of public affairs would require the courts to construe them, if the language would permit, so as to make the right to hold an office, either by election or appointment, as much beyond controversy as possible. The interests depending upon this right are too important to be left to the conflicting decisions of courts and juries, made, perhaps, long after the event, and upon conflicting and unsatisfactory evidence, as to who had received a majority of votes that had never been canvassed. This, however, would be the effect were we to concede the correctness of the relator's contention that the right to hold an office is complete whenever the claimant can by any means show that he received the majority of the votes cast at an election.

But, turning to the statutes, and viewing them in this light and in the light of the decisions of other courts, we are of the opinion that it was clearly the intention of the legislature that no election should be complete, or a candidate qualified to serve, until there has been a proper canvass and certification of the result. Gen. Stats., sec. 1304, which, prior to the act of 1891, already mentioned, provided when and how trustees should be elected, also directed that " certificates of election shall be issued the same as to county and township officers, which certificates, with the oath or affirmation endorsed thereon, shall be forwarded to the county superintendent, who shall file the same in his office." Section 30 of the act concerning elections, as amended (Stats. 1889, p. 42), provides that the county commissioners shall canvass the returns of an election, and issue certificates of election to county and township officers. This careful provision for a public record of the fact of the trustee's election and due qualification indicates the importance attached to it by the

lawmakers, and certainly does not indicate that it was to be a mere matter of form, to be disregarded with impunity. Neither from the reason of the thing, nor from the language used, can we discover any ground upon which to base the belief that the legislature so intended. If the election was legal, it was the duty of the canvassers to canvass the vote and issue the certificate of election, and the courts furnish ample machinery for compelling them to do so, should they improperly refuse.

In *People* v. *North*, 72 N. Y. 124, 128, this question arose upon a statute, substantially the same as ours, which provided that the inspectors of election should canvass the votes cast at a city election, and certify the result to the common council, who, upon such returns, should declare and determine who had been elected, and cause certificates of election to issue accordingly. The court said: " We think that the determination of this case depends upon two questions: First, whether, under these provisions, the election of a ward officer is complete until he shall have been declared and certified by the common council to have been duly elected, and whether this declaration and certificate are indispensable for the purpose of consummating the election and qualifying the candidate to enter upon his office. * * * Upon the first question we are of the opinion that the declaration and certificate of the common council is indispensable to the election and qualification of ward as well as city officers. It is, by the express terms of the act, required as to ward officers; and although the same reason does not exist as in the case of city officers for requiring it, yet, as the legislature have done so, the courts cannot dispense with it. The legislature can provide for the manner in which the result of an election shall be determined and declared, and their enactment is binding. * * * We cannot concur in the view that these provisions are only for the purpose of limiting the time within which the persons elected must take the oath of office. An examination of the whole section shows, we think, that its intention was to provide for the manner in which the election of the candidate should be consummated and officially declared; and that, until these acts are done, his election is not complete, and he is not qualified to serve."

In *People* v. *Crissey*, 91 N. Y. 616, 627, speaking of the case

from which we have just quoted, the same court again said: "The case cited arose under the provisions of the charter of Cohoes, which are different from and more specific than those of the charter of Troy, but the same principle governs both cases—that is, that the legislature can provide for the manner in which the result of an election shall be determined and declared, and their enactment is binding; that the power to declare the result must be lodged somewhere; and that, where the mode of so doing is commanded, until it is obeyed, and such acts are done, the election is not complete, and the candidate not qualified to serve."

In *Carr* v. *Wilson*, 32 W. Va. 419, 426, a case involving the right to hold the office of governor of that state, the New York decisions were approved and followed, and it was declared that no one was entitled to hold that position until the declaration of the result of the election had been duly made.

We are of the opinion that the relator is not entitled to the position in controversy, and that, so far as shown, the defendant Cutts is the legal incumbent thereof.

It is therefore ordered that the information be dismissed.