## Johnson v. Sampson, Governor et al.

(Before Chief Justice Thomas February 7, 1930.)

J. W. CAMMACK, Attorney General, and S. H. BROWN and CLIFFORD SMITH, Assistant Attorneys General, for plaintiff.

EDW. C. O'REAR for defendants.

OPINION BY CHIEF JUSTICE THOMAS—Denying motion for temporary injunction.

By an Act of March 29, 1926 (which is chapter 195, page 895, of the Session Acts of that year and is now section 4356t-1 of our present Kentucky Statutes [Supp. 1928]), the Legislature created our present State Highway Commission (hereinafter referred to as "Commission"), consisting of four members. The creating language is: "There is hereby created a State Highway Commission, which shall consist of four members to be appointed from their respective districts, all of whom shall be appointed by the Governor and confirmed by the Senate." That language is immediately followed by prescribing of qualifications and fixing of terms of the appointees so as that eventually each of them would be appointed for a term of four years, but so as that two of them should be appointed biannually, and following that is this language: "And in case of any vacancy or vacancies by resignation, death or otherwise, the Governor shall fill the same by appointment." But in that connection there is no expressed requirement that such vacancy appointments shall be confirmed by the Senate, and for the manifest reason that they may be made at a time when the Senate was not in session. By the terms of the statute the Governor is made an ex officio member of the Commission, but without a vote, and he is not required to attend its meetings as are the other members. The statute also says: "Before assuming the duties of his office each member shall take the constitutional oath of office and record thereof shall be entered on the minutes of the Commission."

As soon as the act took effect, W. C. Montgomery was duly appointed as a member of the Commission for district No. 2, as the state was divided by the act, and the term for which he was appointed would expire on February 1, 1930; but in May, 1927, he resigned and Governor Fields appointed the plaintiff, Ben Johnson, to fill the vacancy, and he qualified in the manner prescribed by the statute. The 1928 session of the Legislature met and adjourned without the Governor, the defendant Flem D. Sampson, sending to the Senate for confirmation the names of any persons for members of the Commission, and those who were members before the convening of that session of the Legislature continued to

serve after its adjournment, one of whom was the plaintiff.

On December 2, 1929, the defendant, Governor Sampson, filed an executive order with the secretary of state removing plaintiff as a member of the Commission and three days thereafter (December 5) he appointed, to fill the vacancy caused by such removal, the defendant Charles W. Ryans, who qualified by taking the oath and who thereafter attempted to perform the functions of the office. Following that, and on December 13, 1929, plaintiff filed this action against the defendants, the Governor and his appointee, Ryans, in the Franklin circuit court, and in his petition he set out the above facts, and others upon which he relied, and asked that the order of the Governor removing him and the one appointing Ryans be held null and void, and that they each be enjoined and restrained ''from in any way interfering with plaintiff in the performance of his duties as a member of the Kentucky State Highway Commission,'' and that the defendant Ryans be enjoined from attending the meetings of the Commission or in any manner participating in its deliberations, and for all other equitable and proper relief to which he might be entitled. He made motion for a temporary injunction, which was heard by the judge of the Franklin circuit court, and it was overruled. This motion was made before me as a member of the Court of Appeals, pursuant to the provisions of section 297 of the Civil Code of Practice, to grant the temporary injunction refused by the trial court.

In addition to the foregoing facts it was also alleged in the petition, and proven upon the hearing below, that on February 16, 1929, plaintiff tendered to the Governor his written resignation, which the latter declined to accept, followed by conferences between the Governor and plaintiff, in which the latter was importuned to continue in office and to withdraw his resignation, which he did on March 6, 1929. No writing evidencing plaintiff's appointment of any kind was made or signed by Governor Sampson, by letter or otherwise, pending the conferences following plaintiff's resignation, nor was any such ever executed by him after the adjournment of the 1928 session of the Legislature, but plaintiff testified without contradiction that the Governor on more occasions than one after such adjournment promised to

appoint him, and later expressly informed him that he had been appointed according to previous promises.

It is contended by learned counsel for plaintiff in support of the injunctive relief sought: (1) That a proper interpretation of our statutes bearing upon the question, his client when appointed by Governor Fields in 1927, though without confirmation, was entitled to hold the office for the entire unexpired period of W. C. Montgomery's term, or until February 1, 1930, and, that being true, the removal order of Governor Sampson of date December 2, 1929, was without authority and void, as was also his attempted appointment of defendant Ryans to fill the alleged vacancy created by that order of removal; and that, if mistaken in contention (1), then (2) that the facts as hereinbefore narrated were sufficient to constitute a legal appointment of his client by the Governor after the adjournment of the 1928 session of the Legislature. In other words, the contention is that, since the statute creating the Commission does not expressly prescribe the mode, method, or manner of the appointment of its members, a parol appointment by the Governor, followed by his recognition of the appointee as such officer, and the discharge by the latter of the duties of the office, is sufficient in law to constitute an appointment, and which two contentions will be disposed of in the order named.

1. In the recent case of Bell v. Sampson, 232 Ky. 376, 23 S. W. 575, we held that a statute providing for the appointment by the Governor of a State Text-Book Commission, but making no provision for confirmation of such appointees by the Senate, should be interpreted in the light of section 3750 of our present Statutes, saying in part: "Unless otherwise provided, all persons appointed to an office by the Governor, whether to fill a vacancy, or as an original appointment, shall hold office, subject to the advice and consent of the Senate, which body shall take appropriate action upon such appointments at its first session held thereafter." In that opinion we interpreted that provision of section 3750 to require that *all* appointees to a statutory office by the Governor should be confirmed by the Senate, unless the statute creating the office by its express terms or necessary implication should provide otherwise, and that there was no such "otherwise" provision in the statute creating the Text-Book Commission, either by

express words or by necessary implication, nor was there any enacted requirement of confirmation by the Senate of the Text-Book appointees in that statute. In other words, that opinion read into all subsequent statutes the provision for confirmation prescribed by the quoted portion of section 3750, supra, and which latter provision by the express terms of that section should be considered as a part of all subsequent legislation providing for the appointment of offices by the Governor, unless such creating statutes expressly or by necessary implication prescribed to the contrary.

But in avoidance thereof it is argued by counsel that this court in the case of Watkins v. Mooney, 114 Ky. 646, 71 S. W. 622, 24 Ky. Law Rep. 1469, construed a statute, the language of which was similar to that found in the statute creating the Commission, to not require the confirmation of appointments to fill vacancies, since the creating statute as construed by the opinion did not expressly or by implication prescribe for confirmation of appointees to fill such vacancies. The question in that case was the legality of an appointment by the mayor of the city of Lexington, a city of the second class, of a member of the board of police and fire commissioners of the city. The statute (Ky. Stats., sec 3137) creating the appointing power in the mayor, in its first part, provided for the "approval of the board of aldermen" of such appointment. That provision was immediately followed by eligibility qualifications, and later on in the statute it was said: "And the mayor shall fill all vacancies that may occur in said board." It was held that the approval or confirmation of the appointee of the mayor thereunder, first prescribed in the statute for the original filling of the office, did not apply to the *filling of vacancies*, and it is insisted that the Highway Commission statute involved in this case is of substantially the same nature as the one involved in that case, and should receive a similar interpretation, and which no doubt would be true in the absence of a statute relating to the subject-matter similar in its terms to our present section 3750, supra, which, as we have seen, expressly requires that the appointment by the Governor of officers *to fill vacancies* shall be approved or confirmed the same as original appointments. If, therefore, there had been a statute in existence at the time of the rendition of that opinion, relating to the appointment to office by mayors of second

class cities or mayors of all cities, and requiring such appointments, whether original ones or those to fill vacancies, to be approved or confirmed by the board of aldermen, or the board of councilmen, then the opinion would be quite persuasive of the correctness of counsel's contention.

But there was no such corresponding applicable section with reference to appointees by mayors of cities of the second or any other class in existence at that time as we now have with reference to the appointments *by the Governor* as contained in section 3750, supra. We therefore conclude that this argument cannot be sustained, and that appointees of the Governor of members of the Highway Commission, whether original ones or only to fill vacancies, should be confirmed by the Senate following the appointment.

In the Bell opinion, under similar conditions, we held that appointments of the members of the Text-Book Commission who were appointed before the convening of the Legislature should be confirmed by the Senate at some time during the session when the Legislature did convene, and that if it was not done the offices became vacant, so as to authorize the Governor to substitute the places of the original members with new appointees to fill such vacancies; in other words, that such nonconfirmed appointees, though de jure officers, were nevertheless subject to removal by the Governor, and the making of new appointments by him to fill such vacancies would be valid. But in the case of McChesney v. Sampson, 232 Ky. 395, 23 S. W. 548, it was held by us that after confirmation no such removal could be made by the Governor, and, of course, no appointments could legally be made to fill the alleged vacancy because of such unauthorized removal. Following the opinion in the Bell case the appointment of plaintiff by Governor Fields should have been confirmed by the Senate at the 1928 session of the Legislature, and, when not done, he, though a de jure officer, could thereafter be removed by the Governor and his place filled by another appointee. It is, therefore, concluded that there is no merit in contention (1).

2. In disposing of contention (2) we have been somewhat amazed at the dearth of authority upon the subject, and the somewhat confused condition of the opinions that have considered and discussed it. The

difficulty appears to have arisen from the failure to distinguish between what constitutes the "making of an appointment" and the completion of all acts requisite and necessary to vest appointees with title to the office. It seems to be quite universally conceded that the "mere making of an appointment" consists only "in the choice by the appointing power of the person appointed," and when that condition of mind is reached with the appointer he has in his own mind made an appointment. But all the opinions hold that such an appointment is subject to withdrawal until the appointee is vested, in some permanent record form, with official power, and we have been unable to find any case where the latter may be done without some sort of written memorial emanating from the appointing power, and which our domestic case of Hoke v. Field, 10 Bush, 144, 19 Am. Rep. 58, relied on by defendant, and hereinafter to be discussed, also supports as we interpret it.

There is also some confusion created by failing to distinguish between the opinions rendered in cases of collateral attacks of an appointment to office, and where the title thereto is directly called in question. In the former case, much more liberality is indulged in support of the legality of the appointment as will be seen from the text in 22 R. C. L. 422, sec. 69; but in the same text it is said: "It may be provided by law that an appointee to public office must do certain things before he can enter into possession of the office, and these acts then become conditions precedent to the complete investiture of the office. Yet such acts are wholly distinct from the appointment itself." In passing, it might be mentioned that plaintiff did not requalify by taking the oath required by the statute under which he was appointed, at any time after his original induction into office when first appointed by Governor Fields. In other words, he did not so qualify after his alleged verbal appointment by Governor Sampson made after the adjournment of the 1928 session of the Legislature.

Turning now to the limited number of authorities upon the subject, we find in the text of Mechem on Public Officers, p. 48, sec. 115, and the following section, a statement of the law on the question now under consideration, and it is to the effect that, in the absence of a provision to the contrary, appointments to public offices should be in writing, or that there should be somewhere

some written memorial of the fact of appointment signed and executed by the appointing power. The leading case in support of that principle is People v. Murray, 70 N. Y. 521. In the opinion in that case some prior decisions of the courts of New York are referred to and reviewed, as well as the common law upon the subject, it being shown that under the common law appointments to public offices should be made, done, and manifested under, by, or through some writing as above indicated. It was also held in that case that an appointment made contrary thereto is merely *inchoate* until the signing by the appointing authority of the requisite writing to complete it. We will not insert all of the reasoning employed by the court in that case, since the reader may familiarize himself with it by consulting that opinion, and to do so would lengthen this opinion beyond necessary limits.

Suffice it to say that this pointed statement from the opinion expresses the final conclusion reached by the court: "It is quite evident that no verbal declaration of the executive would perfect the appointment. The nomination is but the naming of the person as suitable to be appointed; the action of the Senate is merely the advice and consent of that body that the appointment be made; and the appointment is then made and is evidenced by the commission. The act of signing the commission completes the appointment as well as perpetuates the evidence of it. From that time only is the act irrevocable"

It is true that in that case, which involved the appointment of excise commissioners of the city of Lockport, N. Y., by the mayor of that city, the council ratified such appointments by a vote spread on its records, but which the court held was not sufficient to comply with the requirement that the appointment should be made in writing, because the ratification by the council was not required, and its action in doing so was ultra vires "and without efficiency." If, however, the mayor who made the verbal appointment to the council was required to and did sign the ultra vires order of the council, a different conclusion would possibly have been reached, since his signature to a writting designating his verbal appointees as officers for the places for which they were selected by him would perhaps constitute a written designation, so as to comply with the requirement that the appointments should be in writing.

The same rule, with practically the same cases in support thereof, is stated by Mr. Throop in his work on Public Officers, p. 95, sec. 86, and in the following section on the next page he cites the case of Conger v. Gilmer, 32 Cal. 75, in support of the proposition that an appointment to office by a board is not complete "until a certificate thereof has been made and signed, until which time the appointment may be revoked."

In 23 American and English Encyclopedia Law (2d Ed.) p. 344, the text, carefully prepared for that excellent work, stating the requirements of the legal form of an appointment to office, says: "As a general rule a written instrument is necessary, and oral appointments have usually been held to be invalid." In support of that text there are cited these cases from the English courts: Curle's case, 11 Coke, 2B; Craig v. Norfolk, 1 Mod. 122; Hunt v. Ellisdon, 2 Dyer, 152B; and these cases from courts of the United States: State v. Crawford, 28 Fla. 441, 10 So. 118, 14 L. R. A. 253; State v. Allen, 21 Ind. 516, 83 Am. Dec. 367; State v. Meder, 22 Nev. 264, 38 P. 668; People v. Murray supra, and other New York cases discussed in the opinion in that case and which we have hereinbefore referred to. See, also, the case of Phelon v. Granville, 140 Mass. 386, 5 N. E. 269.

But counsel for plaintiff, as hereinbefore pointed out, relies upon the Hoke case, supra, as holding to the contrary. The above referred to text-writers mention it as practically the only one in seeming conflict with the other cases upon the subject; but under our interpretation it does not appear to be so. In that case the validity of the appointment of a back tax collector for Jefferson county was involved. By the statute creating the office the county judge of Jefferson county was authorized to appoint the collector. He exercised that authority in this manner alone. He announced his appointment to the county court clerk, and we infer that a notation of record was made of it, and the clerk in the presence of the judge administered the oath to the appointee. If the judge signed the order made by the clerk, it constituted, no doubt, a sufficient written memorial of the appointment to comply with the law in that regard. But, if it was intended by that opinion to hold that an appointment would be valid without any character of writing executed by the appointing authority evidencing it, we doubt if the opinion could be held to be sound. It is, if so inter-

preted, in conflict with the opinion of Chief Justice Marshall in the case of Marbury v. Madison, 1 Cranch. 137, 2 L. Ed. 60, wherein it is said that a verbal appointment, followed by mere recognition, is not "an open unequivocal act" sufficient to render the appointment valid, and if the opinion in the Hoke case goes to the extent contended for by counsel for plaintiff it is the only one cited by the learned authors, supra, as in any manner countenancing a contrary conclusion to the one adopted by the other courts requiring an appointment to be in writing in some form.

So construed it would set aside and ignore the wholesome and most salutary reasons for the adoption of the majority rule (i. e., that the appointment should be evidenced by some sort of writing, or record), as set forth by the New York court in the Murray case, supra, in this language: "It would be unfortunate if the title to office of one upon whose official acts public interests and private rights hinged, did or could be made to depend upon the verbal declarations and statements of the person having the power to make the appointment, to be proved by parol and liable to be forgotten, misunderstood or misreported, subject to all the contingencies and infirmities which are incident to verbal evidence, or evidence by parol, so pregnant of mischief and misfortune as to have led to the enactment of the statute of frauds. It will not be presumed that the Legislature, while making void contracts involving trifling pecuniary interests, unless evidenced by some writing, intended that important civil offices should be conferred without a commission or any writing, but simply by a verbal statement of an individual in any form which by the bystanders should be understood as expressing a present intent to make the appointment; and a liberal interpretation will be given to the statutes bearing upon the subject if necessary to avoid any such conclusion."

To adopt the rule contended for by counsel for plaintiff and the interpretation he places upon the Hoke opinion, would result in interminable confusion and in an almost immeasurable amount of loss of public service, growing out of contentions and disputes over the rightful possessor of an appointive public office. A contestant for the office might be verbally appointed by the appointing authority, and which he could prove, perhaps, without contradiction, and another subsequently and similarly appointed one to the same office might be able to

establish his title in that manner equally conclusive, and the public business to be discharged by the officer would be suspended and interrupted by constant contentions over the rightful title to the office, and at the same time courts would be filled with such contests, and their time consumed to the detriment of the rights of other litigants, in the investigation and determination of such disputes. The mode and method almost universally adopted heretofore in this state, as well as in other jurisdictions, was and is the execution of some kind of writing, properly preserved, evidencing the appointment, and that method has become practically the universal one for the investing of an appointee with title to office, and we think that, before it should be dispensed with, a provision to the contrary should be plainly and unmistakenly manifested by legislative fiat in the form of a statute duly enacted. We have no such contrary provision applicable to the office now under consideration, and in view of the authorities supra, and the most convincing reasons therefor, we are constrained to the conclusion that, since plaintiff failed to plead or to prove any such appointment in writing, he failed to establish his title to the office of road commissioner for which he contends in his petition.

If, however, we were more doubtful upon the question, we would then be inclined to solve the doubt in favor of a written appointment because of the requirement contained in section 91 of our Constitution, saying: ''The duties of all these officers (treasurer, auditor of public accounts, register of the land office, commissioner of agriculture, labor and statistics, secretary of State, attorney general, and superintendent of public instruction) shall be such as may be prescribed by law, and the secretary of state shall keep a fair register of and attest all the official acts of the Governor,'' etc. That language with reference to the secretary of state is the only specific duty attached to any of the named officers throughout that entire section, and which shows, to our minds, that it was the intention and purpose of the convention that framed our present Constitution to provide for the recording of all of the official acts of the Governor, to the end that perpetual memorial thereof should be made and preserved in the office of secretary of state. We also deem it reasonable to conclude that in so providing it was within the contemplation of the members of the convention that such official acts of the Governor would

themselves be in writing and which the secretary of state should attest and register. It would be impossible to attest or register an oral or verbal appointment, and it is universally held that the appointment to office by the Governor is an official act, so as to come within the requirement of the above inserted excerpt from section 91 of our Constitution. It would therefore seem that, independently of the general rule upon the subject, our constitutional provision by necessary implication requires such an appointment as is here involved to be made in writing, and a memorial thereof to be kept and preserved in the office of the secretary of state.

It is therefore our conclusion that the court properly overruled and denied the motion for a temporary injunction, and the motion made before me as a member of the Court of Appeals to grant the injunction which the trial court denied is, therefore, overruled.

The whole court sitting and concurring.